

DISTRICT JUDGE ROBERT J. BRYAN
MAGISTRATE JUDGE J. RICHARD CREATURA

FILED
RECEIVED
LODGED

MAY 28 2015

CLERK'S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF WASHINGTON
WESTERN DISTRICT AT TACOMA

BRADLEY A GRUBHAM
    PETITIONER

V.

SUPT. MIKE OBENLAND
    RESPONDENT

)
)
)
)
)
)
)
)
)
)
)
)
))

NO. c13-5646 RJB JRC

MEMORANDUM IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS UNDER
U.S.C. 28 § 2254

(clerks action required)

## I. MOVING PARTY AND JURISDICTION

COMES NOW, Bradley A Grubham, appearing pro se, is currently incarcerated
at the Clallam Bay Correctional Center, illegally restrained, under a Warrant
of Commitment for a conviction from Kitsap County cause #09-1-01001-1. Grubham
claimed Self Defense in this case and the State overcame this defense through
Instructional Error by Misstating the Law of the Self Defense-Aggressor instruc-
tion. Specifically; what constitutes 'provocation' and 'aggressor'.

## II. EXHAUSTION

Grubham raises four issues within this Memorandum of Law. The Misstatement
of Law issue and the Ineffective Assistance of Counsel for failing to object
to this error were presented twice to the Washington State Courts of Appeal.
On Direct Appeal as well as Pers. Restraint Petition. Both issues were properly
exhausted both Federally and U.S. Constitutionally. The States rulings were
contrary to both those authorities.

Petitioners other two issues were required to present supporting evidence
from outside the record therefor they could not be raised until Pers. Restraint
Petition. The States failure to review as well as reverse are contrary to both
Federal and U.S. Constitutional Law that was attached to both issues.

For the fact that Petitioner has never been effectively represented,
he has been forced to raise all four issues pro se. At SAG and PRP.

## OPENING PRO SE PLEA

Because Grubham has never enjoyed his 6th Amendment rights, and has attempted

to raise these issues issues pro se entirely he has been at a great disadvantage

The restrictions of indigency, lack of education and attempting to research

and present this Petition under the restrictions and limitations of incarcera-

tion, petitioner asks that this "pro se pleading be liberally construed for

its inteneded content and not held to the same stringent standards of that

required from a licensed attorney". Haines v Kerner, 404 U.S. 519, 520(1972)

Petitioner asserts it would be a miscarriage of justice to dismiss his pleading

on issues of rule or procedure that do not directly conflict with law or AEDPA.

## GROUNDS FOR REMEDY

Ground #1
Petitioner was denied his 5th, 6th and 14th Amendment United States Constitu-
tional guarantee when the State committed an Instructional Error by Misstating
the Law of his Self Defense-[First] Aggressor jury instruction.

Ground #2
Petitioner was denied his 6th Amendment United States Constitutional guarantee
of Effective Assistance of (both) Trial and Appellate Counsel. Both attorneys
failed to timely address the Misstatement of Law issue, listed above. Trial
Counsel failed to object and request a curative instruction. Appellate Counsel
failed to raise, present, and show the automatic reversal requirement of this
issue at appeal.

Ground #3
Petitioner was denied his 5th and 14th Amendment United States Constitutional
guarantees when the State 'Knowingly Used False Testimony to go uncorrected
in order to obtain this conviction.

Ground #4
Petitioner was denied his 6th Amendment United State Constitutional guarantee
of Effective Assistance of Trial Counsel when his counsel failed to present,
for the jurors view, the exact same evidence that will be presented for the
District Courts view, supporting that critical testimony from the States most
important witness, was false.

## Questions for Appeal

1) Is an Instructional error that demands a conviction, regardless of how favor-
able acquittal was inferred otherwise, be harmless? Does that same error deny
a defendant a fair trail? Because this error relieved the State of proving
the element of 'absence of self defense' beyond a reasonable doubt; Is it Struct
ural Error? Is this Constitutional Instruction error entitled to Harmless Error
Analysis? If the State Courts of Appeal reviewed this unpreserved issue for
the first time on apeal, is it automatically reviewable by the Federal Courts?

2) If an Instructional Misstatement of Law demands conviction regardless of
an imminent acquittal otherwise; can there be a tactical reason for not object-
ing to the error? Does Incompetence by an attorney under RPC 1.1 Competence,

**2)** If an Instructional-Misstatement of Law demands conviction regardless of how favorable acquittal seemed otherwise; Can there be any possible strategy for ot objecting? If an attorney does not recognize a Misstatement of Law of a Self Defense instruction that negatively affects his clients Self Defense theory: Is he deficient under RPC 1.1 Competence "legal knowledge is required".

**3)** If the State allows testimony he knows to be false, in order to obtain a conviction, require reversal? Should that falsely testifying witness' testimony be disregarded in toto?

**4)** Is a trial attorney ineffective if he fails to present multiple prior inconsistent statements made by the States prime witness, for impeaching purposes, constitute 'Ineffective'? If that same witness makes a false police report against the defendant, showing desire and willingness to testify falsely against the defendant, thereby impeaching the alleged victim, constitute Ineffective? Could there be any trial strategy to not impeach the States main witness?

**5)** Did Petitioner properly exhaust his remedies? Is the States rulings contrary to Federal and United States  Constutional Law? Were same decisions based on unreasonable facts in light of the evidence presented?

## FACTS OF THE CASE

PROCEDURAL FACTS

Grubham was convicted in Kitsap Co. Superior Court (#09-1-01-001-1) for Assault in the First Degree. On direct appeal Grubham raised the Instructional Misstatement of Law of the Self Defense instruction.within a pro se SAG. For this unpreserved error to be reviewed for the first time on appeal, it was necessary to show the error was 'manifest affecting a constitutional right'. This burden was overcome and the issue reviewed. Instructional error was conceded. Contrary to Federal Law the court failed to provide a Harmless Error Analysis. Grubham raised an Ineffective claim for his attorney failing to object to the error. Contrary to Federal Law the court required the defendant to 'show a substantial likelihood' of prejudice. (Unpublished Opinion, pg 19, #40170-3-II) Grubham requested Discretionary Review by the State Supreme Court. REVIEW DENIED. Grubham sumitted a Pers. Restraint Petition. Raising the Knowing Use of False Testimony because all supporting evidence was outside the record and not reviewable on direct appeal, the COA ruled, contrary to Federal Law, that False Testimony was a Credibility issue and not reviewable on appeal. (Order Denying Review #44895-9-II pg 2) Grubham raised an Ineffective Counsel for failing to impeach the false testimony with the (2)upporting evidence of False Testimony.

Review-#44893-9-II pg 2) Grubham raised an Ineffective Assistance of Counsel for his attorney failing to impeach the States witness with the very same evidence that shows the Testimony was False. The COA denied the issue because they had 'addressed' the issue previously. Grubham requested Reconsideration. That was sent to the Supreme Court as Discretionary Review. REVIEW WAS DENIED.

## SUBSTANTIVE FACTS

### Statement of Facts

Two days before this fight Grubham received back pay due for a Social Security error. Apparently he'd done a little jig in his back yard, which is visible from phillips and his girlfriends kitchen window. The following day asked him if he thought he was a "ladies man". Confused, Grubham inquired and Phillips responded "we saw you". Grubham gave it no thought. Upon viewing Phillips false allegations to Det. Harker, that Grubham used to verbally and disrespectfully speak about his girlfriend. (exhibit c) Grubham remembered the "ladies man" statement and now believes Phillips had jealousy issues. Phillips also has a "violent criminal history". RP 17-Sentencing transcripts.

Grubham's 'windfall' gave him the ability to repair his vehicle. The following day Grubham was returning from State witness Bautista's apt. Attempting to get tools. As he passed Phillips opened back door (July) Phillips was yelling at his girlfriend about "not having any contacts" and Grubham responded with what he believed was clever pun.."get ya some glasses with a chain". Instead of a positive response Phillips blew up with "fuck you you stupid mother fucker". Other than a quick hesitation Grubham continued to his apartment next door. Not recognizing any issue Grubham went to Phillips apt. later and borrowed a lug wrench. Phillips wasn't home so his girlfriend loaned it. Unbeknowst to Grubham, this too, made Phillips mad. RP 46 Later that night Grubham swung in to Bautista's. Phillips was at his own porch. Still not understanding Phillips

issue, Grubham said "stupid huh?". Instead of an expected "my bad" Phillips

blew up again and Grubham responded with a 'piss off' type response. Aggressive-

ly Phillips asked "you got a problem homeboy" as he stepped towards Grubham.

Grubham turned and faced him and it appeared Phillips changed his mind and

turned back around. (Phillips is 6'2" 225lbs. Grubham 5'8'' 185 lbs) Grubham

said "that's what I thought" and turned back to knock. Grubham heard Phillips'

toolbox rattle then aggressive footsteps. He turned and Phillips was armed

and attacking. Grubham grabbed what obviously was Tims cousin Mario's carpet

tool (RP 212, trial exhibit 18)(becasue it was the only weapon found at the

scene)(Officer Roessel's report exhibit J) off the window mounted A/C which

was next to Tims door. Phillips tackled into Grubham, wrapping him up, Grubham

thrust upward three times striking Phillips in the chest, as Phillips dragged

him downward. Grubham pulled out of his shirt and fell backward. Phillips dove

on top of him and they fought across the yard. Grubham was heard yelling repeat-

edly "get off" and "let go" as he struggled for escape. Bautista came immediate-

ly from behind his apartment. He yelled "you're stabbing him". At this knowledge

both combatants relaxed a bit. (per Bautista's testimony Phillips was still

on top of Grubham, Grubham on his butt, pinned to the tree) RP 103, 105 When

Phillips relaxed and went up on all fours and Grubham slid up and outward.

Phillips  an overhead blow (still armed) and gouged Grubham in the left arm

RP 199 as he held it up defensively. Grubham hit downward one time into Phillips

back as he stood and continued his escape. RP 202, 239

 Approx 12 hrs later Grubham was arrested at his homw next door by lead

Det. Harker. Suprisingly for First Degree Assault. Grubham vaguely established

his self defense theory when his only statement was "he should be going to

jail not me". (exhibit B pg 2)

1)    Phillips gave three vastly different statements prior to trial. His first detailed statement was to Officer Fatt. 2 hrs after the fight he told Fatt that he'd been attacked from behind while standing on his own porch. He stated that his initial blows were to his back and until later he thought he'd been punched. (exhibit A) This evidence supported Probable Cause drafted by lead Det. Harker. (exhibit B)

2)    The following day Phillips told Harker that after a brief exchange of words, Grubham "lunged" at him, the "ran towards him" and that he "grabbed" Grubham to "push him out of the way" "causing [Grubhams] shirt to come off" Apparently the two fought across the yard. Phillips said they went to the ground next to the parkinglot and "as soon as they hit the ground he could feel him stabbing me in the chest". (exhibit C)

3)    Two weeks later Phillips told Defense Investigator, during a verbal inter-view then immediately after in a taped statement that he walked up to Grubham "grabbed him by the shirt and dragged him down" "off the porch" then "pulled him down". He stated that after "pulling him down" he was stabbed "in the chest" (exhibit D)

4)    ~~If Phillips lying isn't obvious enough~~, Phillips gives an easily determined to be false police report. Alleging Grubham made several "loud" death threats toward him 'when he attended a pre-trial hearing. Grubham is in custody. Had he been in court he's be shackled to multiple others and escorted by sheriffs deputies. Not only is this facially rediculous, Grubham was not even in court on the alleged day. (see exhibit E pg 1 & 2) Phillips told this to Det. Harker.

Although Investigator Harris specifically stated that there were likely credibility issues to be considered with the states witness, and although Phillips testimony is very different to any of these prior statements. None were seen or heard

(5)

or heard by the jury. ~~eventhough~~ Phillips denies two of the prior inconsistent

statements at trial. (Harris' credibility concerns-exhibit D, 9,10, please view)

Phillips has changed his story 3 times and made a false accusation against Grubham.

Facts of the Case

Phillips false allegations, to police, establish his intent on falsely accusing

Grubham of acts for which Phillips has no motive other than malice. Phillips

three inconsistent statements establish he is lying about the fight. Considering

one of those pre-trial statements is a taped confession of being the first

aggressor it is surprising that the State could anticipate receiving a First

Aggressor instruction then argue that Grubham is the Aggressor ~~and~~ <sup>therefore</sup> not entitled

to a claim of self defense. Prior to trial the State proposed the First Aggres-

sor (WPIC 16.04) instruction, as well as an 'Ignorance of the Law.." instruction

that ₍ultimately₎ supports the First Aggressor argument at closing arguments. (intructions

#20 & #7, exhibits I & H respectively) Phillips was the first witness of the

trial and first that morning. When the State asked Phillips VRP 28 "What happen-

ed?" Phillips told the jury that he simply (entirely new version) approached the defendant to tell

him 'not to knock' and Grubham "just stepped off the porch and started stabbing

me" [in the chest-RP 28]" The State had to 'remind' Phillips he'd approached

Grubham 'twice' and 'it wasn't until the 2nd approach he was attacked'. As

if Phillips knew what the State was suggesting he answered that "yeah, first RP2g

I went back to my painting then I walked back to him, and THEN he"just stepped

off the porch and stabbed me". (paraphrased leading question and response-RP_28)

Regarding the taped confession of being the initial attacker, interesting-

ly it is the State that raises it. It is first mentioned at RP 31 using a qued

word.("remember") "Do you 'remember' if you grabbed him?'" "Do you 'remember'

meeting with a defense Investigator Mr. Harris?" Phillips seems to clearly

remember the meeting. At RP 32 Phillips is 'reminded' that ~~State &~~ (State) Phillips

( 6 )

had "reviewed this [recorded statement] with you earlier this morning". (it

was approx 9:30 am at that time) The State asks Phillips "Do you 'remember'

telling Mr. Harris that..you MAY have grabbed him?" ["Did you grab him"] Again,

as if anticipated the suggested response, (not admitting the inconsistent state-

ment) is given. Phillips: "I--I don't think so. I -- I don't really remember".

    At cross-examination, regarding this key impeaching taped confession, that

Phillips, essentially denies, (statement) is never produced. The only mention is at

RP 39-40 Defense: "Back in July..[you spoke to]..."my investigator, Jim Harris,

(but) we've already talked about. [The State] talked about your statement to

[Harris]". No impeachment with the tape (ER 803-(a)(5) **Recorded Recollection.)**

Which to paraphrase permits a taped statement to be presented at trial when

"a witness who once had knowledge but now has insufficient recollection" can

be played to "enable the witness to testify fully and accurately" if "shown

the matter was fresh in the winess' memory" [reflecting] "that knowledge correc-

ly". Defense neither impeaches Phillips with the taped interview nor does he

call Mr. Harris to testify. Defense skips straight to the original, inconsistent

statement given by Phillips to Officer Fatt, which Det. Harker cites in his

Probable Cause Certificate. (exhibits A & B) alleging he was standing on his

own porch and "when he turned to put his spray paint down, (he was) attacked"

[From behind] "and 'initially' struck in the back". Phillips was asked twice RP4/,4/2

regarding that statement "Did you tell (Fatt or Harker) that?" Phillips: "NO"

Defense: "Okay". Phillips is asked once more "Did you tell the police officer

that" Phillips: "NO" Defense ineffectively states that he merely had "the impres

sion" I get, from the police officer, is that your "back was turned.." Phillips

denies this scenario and supports testimony that the initial contact was..

Phillips: "First stabbings were in the chest". (W/O impeachment) Defense: "Okay".

Defense neither impeaches Phillips regarding the two denied prior inconsistent

statements under ER 613-PRIOR STATEMENTS OF WITNESSES nor does he present the

third prior inconsistent statement or the Police report falsely accusing Grubham

of a felonious act of death threats during open court, on a day that Grubham

was not at court. (exhibits (C) & (E pg 2)) Phillips also denies ever touching

Grubham RP 35 "never touched him" He denies "punching" Grubham RP 32 "NO. I never

punched him". He denies "grabbing" Grubham RP 32 "I don't remember"[grabbing him]

Phillips testified that "There was never a fight" RP 39 He also denies "knowing"

Grubham RP 28 "Just seen him around" (denying motive) even though Phillips

contradicts every single denial, himself, in official reports. (exhibit A,thru D)

as well as his girlfriends son Shaun Stoops, who witnessed the fight. (see

exhibit F & D, pg3)(respectively) Phillips testimony that Grubham stood over

his stabbing him while he was "on his knees" is contradicted by State witness

Bautista RP 105 Bautista testified that Grubham was "sitting or squatting"

with Phillips on top  RP 102-03 Grubham "pinned" to the tree. As Grubham testi-

fied, supported by Bautista, Grubham stood up RP 239 (see also RP 232-241) & ran.
                                                           never
Phillips was impeached or questioned regarding any of his contradicting prior
                                      Stoops
statements or statements from 'family' or neighbor and State witness Bautista.

Phillips was given free reign to testify, seemingly with no fear of contradic-
                                        his prior
tion or impeachment though he is clearly aware of contradictory, perjury support

ing, taped and not, official reports.

   Petitioner, Grubham, testified, consistently, through out the case, that

RP 196 (After saying 'stupid huh?') Phillips asked him if he "[had] a problem"

RP 196, 226, 232-236 and Phillips aggressively approaches him. He testified

that as he turned to face him, Phillips seemed to change his confrontational

intent and turns around. Grubham admits he said "yeah, that's what I thought"

RP 196 and turned back to knock. He testified he heard the toolbox rattle then

footsteps. RP 232-239 Grubham testified that he grabbed 'something' off the A/C RP 196-97 just before Phillips, armed, tackled into him. Grubham testifies he could ony "thrust up" RP 198 because his arms were "pinned" to his sides due to the 'tackling,. RP 196-202 and RP 232-239 Grubham contends he went to the ground and Phillips continued his attack. Grubham testified that he yelled "let go" and "get off" repeatedly as he backpeddled, from his butt, until he "slamed into the (pipe or tree)". (there was a vertical pipe in the area, used to fill heating oil, that Grubham believed he'd hit) He states that as he raised up Phillips "came at him again" RP 202, 239 "in the back" as he fled.          Grubham hit him once more

It is important to understand that Grubhams allegations that he simply "gouged" at Phillips back while he was backpeddling, with Phillips on top of    (on his butt) him, is supported by the States professional witness Dr. Dahlgren. Dahlgrens' testimony, also casts heavy doubt on Phillips allegation that Grubham stood over him , stabbing him in the back, while he was 'on his knees'. Dahlgren testified that all but one back wound was "superficial" (less than 1cm deep) RP 126-128 They'd likely be deeper had Grubham been 'standing over' Phillips.

Post fact-finding the Self Defense-Aggressor instruction was discussed. RP 243-44 The court requested positions on the 'appropriateness' of the First Aggressor instruction.

    <u>State:</u>" I think it is appropriate..based on testimony of..Phillips, who 'believed' the defendant came at him first. HE DIDN'T KNOW. He indicated..he MAY have grabbed him first. HE DIDN'T KNOW."

    <u>State:</u> I believe that (Phillips, Grubhams, and Stoops testimony) covers this aspect. Two out of the three indicate Phillips was the initial aggressor. Phillips indicates that Grubham was the initial agressor. While it pains me. I think it probably SHOULD BE GIVEN. I would NOT OBJECT.

(9)

Prior to fact finding the jurors were "obligated to take an additional oath"

RP 18 They were asked if the swore:

> "you will well and truly try the issues between the State of Washing-
> ton and the defendant, [Grubham] according to the evidence and the
> **instructions of this Court?"**

At RP 21 the Court instructed 'I will 'explain the functions and duties of the jury

and procedure that will be followed during the trial".

> "The lawyers remarks, statements, and arguments are intended to **help**
> [them] understand evidence and **apply law. They..should** disregard
> any remark, statement, or agruments that are not supported by the
> evidence or the **law as I give it to you.**

The Court further instructed: RP 23 "After all the evidence has been presented

I will instruct you on the law through jury instructions. Then the attorneys

wll..make closing arguments". After testimony the jury instructions were given.

_ <u>**INSTRUCTIONS:**</u>#1 Duties, #7, Ignorance of the Law, #20 Self Defense–Aggressor
      (exhibit G)          (exhibit H)           (exhibit I)

#1    ¶1."It is your duty to decide the facts in this case based upon
the evidence presented to you during this trial. It also is your
duty to accept the law from my instructions, regardless of what
you personally believe the law is or what you personally think it
it should be. You must apply the law from my instructions to the
facts that you decide have been proved, and in that way decide the
case".......¶12 "..In closing arguments, the lawyers may properly
discuss specific instructions. During your deliberations, you must
consider the (remarks, statements and arguments) instructions as
a whole".

#7    "It is not a defense to a criminal charge that the defendant believed
his or her conduct was lawful. Ignorance of the law is no excuse
for criminal conduct".

#20    "No person may, by any intentional act reasonably likely to provoke
a belligerent response, create a necessity for acting in self-defense
..and thereupon use, offer, or attempt to use force upon or toward
another person. **Therefor, if you find** beyond a reasonable doubt
that the defendant **was the aggressor, and that the defendants acts
OR conduct provoked or commenced** the fight, then self defense..is
not available as a defense."

13

## <u>INSTRUCTIONAL-MISSTATEMENT OF LAW WHICH DEMANDED CONVICTION</u>

The jury took an 'additional oath' at the beginning of the trial; swearing
to 'try the case according to the evidence and the instructions'. RP 18-19
Their first instruction is the 'Duties of the Jury' instruction. They are duty
bound to "accept the law of the instructions, regardless of what they personally
believe the law is or what they believe it should be". They are instructed
that they "must apply [those laws]..to the facts that they decide have been
proved". They are also instructed that these laws include, 'as a whole, the
attorney "discussions" regarding "specific instructions" At "closing" arguments.
The 'discussion' regarding the 'Self Defense-Aggressor instruction (WPIC 16.04)
is at RP 262 The State correctly states that this specific instruction says
"if you are the first aggressor, you don't get to claim self defense". The
STate then goes to reduce the standard in what constitutes an aggressor from
"create a necessity" or "provoke" to the childish standard of "who started
it". He reduces the standard further with "Did he start it by sayin something,
being aggressive with his language?". He also asserts that, essentially, if
you started it by saying something it"explains the respondents behavior".

> RP 264-65 "It doesn't say if you threw the first punch or if you grabbed
> the person first". (which is actually what it does say) It says
> an "intentional act reasonably likely to provoke a belligerent res-
> ponse", like calling someone a name".

The State has asserted that a person can be the Aggressor and therefor "don't
get to claim self defense". RP 262 'if you call somebody a name'. He then define's
Grubhams statement. <u>RP 265</u> "Yeah, that's what I thought" "What does that mean?"

> "It means you don't have the guts, <u>you are a chicken,</u>.."Do you expect
> a belligernt response?" 'Belligerent means "combative"'

The State then sets a scenario that was established with the use of the leading
question at the beginning of the trial at the same time Phillips is alleging

he was the one attacked.  VRP 28 "Well now, is that what happened first or
did you go back and paint---" "Yeah, First I walked up to him...then I went
back [to paint] [then] I walked back over [to Grubham]"(and he stepped off
the porch and stabbed me) This is a very important "leading question".
The State sets the scenario:

> VRP 265 "..Phillips is walking away..I'm not going to say Phillips
> was right for <u>stopping and coming back</u>" But "by the defendants
> 'statement' "Yeah that's what I thought" he was 'inviting' (lower
> standard than provoking) a [combative] response. Yes he was. And
> <u>THAT IS EXACTLY WHAT HE GOT.</u>

This just mentioned argument is a <u>**MANIFEST SUBSTANTIVE FACT.**</u> The State has
just shown and conceded multiple facts with his own argument and actions.
1) The State has just conceded that Phillips was the initial aggressor. (other
than words) 2) By using the product of the leading question (RP 28 Yeah, first
I walked back to paint..) to create an illusion that PHillips was 'provoked'
by the statement (stopping and coming back) he is conceding that Phillips testi-
mony at RP 28 (he just stepped off and stabbed me) is false and known to be
false at the exact moment it was being procured. 3) The fact that the State
proposed the First Aggressor instruction AND the Ignorance of the Law is No
Excuse VRP 265 to support this argument (concession) prior to trial it is compel
ling evidence suggesting the State believed Phillips attacked Grubham after
an exchange of mere words..well before trial.

The State has established, in the jurys eyes, that Grubham has started
this fight, even though it (must) appears Phillips was the initial attacker.
The State has established though that the statement (which has been proved)
was sufficient to "start the fight" (aggressor RP 262) so "you don't get to
claim self defense". (according to the aggressor instruction) The State repeats
this Misstatement of Law at RP 311

<u>VRP 311</u> "How did the fight start?..the defendant..made a statement. He
invited a [combative] response and he got a [combative] response...
That is what started this fight. He should not be entitled to self
defense [claim]..when he 'invites' [combative] conduct. When you
[call someone a chicken]...YOU GET WHATS COMING. (even if its seems
childish and immature)(ignorance of the law is no excuse)

It appears Phillips theory was not credible enough to argue. It appears also
that the State, let alone the jury, believed Grubham was the one attacked.
The Courts of Appeal need view the entire dynamic of this case as such. Grubham
is the one on the defensive, Phillips is a State conceded aggressor and perjurer.
Known (or believed) to be a perjurer, by the State, within 5 minutes of the
fact finding which was Phillips testimony. Phillips testimony need be disregard-
ed in toto.

It also need be noted that even though it is conceded, therefor likely believed
by the jury, that Grubham was indeed acting in self defense; the jury had no
alternative but to find that, "according to facts that were proved" that Grubham
"acts or conduct..commenced the fight, [therefor] self defense is not available
as a defense". This is according to the Aggressor instruction and the States
closing argument, as a whole.

OVERVIEW

Grubham was attacked by Phillips after a brief argument. His
version has never wavered. He told the arresting officer that
it should be Phillips that was going to jail. Phillips changed his
story three times before trial. He also made a false criminal rep
ort aginst Grubham before trial. He is clearly deceptive. The State
needs new testimony to get an aggressor instruction, then misstate
the law of that instruction so an erroneous conviction can be guar
anteed. The state allows and coaches Phillips to get that instruc
tion.uncontradicted by Phillips. The state misstates the law and
tells the jury that Grubham is not entitled to claim self defense
because he said "that's what I thought" therefor "he started it"

(13)

ARGUMENTS

Petitioner contends that each issue with this brief has been raised pro se only throughout the State Courts of Appeals. Now the federal level. Petitioner prays that this court "construe this pro se pleading liberall and for its intend ed content. That this pleading not be held to the same stringent standards had i it been submitted by a licensed attorney" Haines v Kerner, 404 U.S. 519, 520(1972)

Argument #1

PETITIONER WAS DENIED HIS 5th, 6th, and 14th AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION WHEN THE STATE MISSTATED THE LAW OF A SELF DEFENSE-AGGRESSOR JURY INSTRUCTION THEREBY DENYING THE DEFENDANT HIS ABILITY TO ARGUE HIS SELF DEFENSE THEORY. THIS ERROR ALSO RELIEVED THE STATE OF ITS BURDEN OF PROVING THE "ABSENCE OF SELF DEFENSE" ELEMENT OF THE CRIME CHARGED BEYOND A REASONABLE DOUBT. THE STATE COURTS OF APPEALS HAS CONCEDED THE MISSTATEMENT OF LAW ON DIRECT APPEAL. THE STATES RULING THAT THE DEFENDANT CARRIES THE BURDEN OF TO SHOW THAT HE WAS SUBSTANTIALLY PREJUDICED BY THE INSTRUCTIONAL ERROR IS CONTRARY TO FEDERAL LAW AND A UNITED STATES CONSTITUTIONAL DEPRIVATION.

Standard of Review

"Jury instructions are reviewed de novo and are to be evaluated in the context of the instruction as a whole".State v Benn, 120 Wn.2d 631, 554-55(1993)(also Gilbrook v City of Westminster, 177 F.3d 839, 860(9th Cir 1999)) "Jury instruc-tions are sufficient when they permit each party to argue their theory and properly inform the jury of the applicable law".State v Rice, 110 Wn.2d 577, 603(1988) also Brewer v City of Napa, 210 F.3d 1093, 1097(9th Cir 2000) A party may raise a claimed error for the first time on appeal if the claimed error in "manifest affecting a constitutional right". RAP 2.5(a)(3)

At trial the State claimed that Grubham was not entitled to his Self Defense claim because he'd made a statement prior to being attacked. This argu-ment asserted Grubham as the Aggressor. On direct appeal Grubham proved this argument was a Misstatement of Law, citing State v Riley, 137 Wn2d 904, 911(1999) Grubham also cited State v Lafaber, 128 Wn.2d 896, 898(1996) Holding: "Jury instruction misstating the law of self defense is an error of 1) constitutional

magnitude" 2) are "presumed prejudicial" and 3) "reviewable for the first time
on appeal" citing RAP 2.5(a)(3) The COA did in fact review this claim for the
first time at Direct and conceded the (Instructional) Misstatement of Law(see
Unpublished Opinion-#40170-3-II pg 19) "Grubham is correct that language does
not establish that the defendant was the aggressor" citing Riley, 137 Wn.2d
@ 911) Contrary to Federal (and State) law, the COA placed the responsibility
for this error off the State and on defense for "failing to object or request
a Curative instruction" instead of subjecting the error to a Harmless Error
Analysis. Grubham attached , within the pro se SAG, an Ineffective Assistance
of claim for exactly that "failing to object and request a curative instruc-
tion". (pg 19 FN 21) Again, Contrary to Federal Strickland Law the COA held
the defendant to an inflated burden, requiring a "substantial likelihood" not
the correct "reasonable probability" standard. The COA's failure to subject
the Instructional/Misstatement of Law to Harmless Error Analysis is contrary
to Federal law. "An error in a criminal jury instruction requires reversal
unless there is no reasonable possibility that the error materially affected
the verdict, in other words, Harmless Beyond a Reasonable Doubt". United States
v Pierre, 254 F.3d 872, 877(9th Cir 2001) Because 'no citation or authority'
was required in Grubhams pro se SAG (RAP 10.10(c)) no holding was presented
establishing that this misstatement of law relieved the State of its burden
until Petition for Discretionary Reveiw (#86656-2, 9 & 11) Grubham cited State
v Acosta, 101 Wn.2d 612, 615-16(1984) "Where the issue of self defense is raised
the 'absence of self defense' becomes another element of the offense, which
the State must prove beyond a reasonable doubt". "The Due Process Clause of
the 14th Amendment of the U.S. Constitution requires the State to prove beyond
a reasonable doubt all facts necessary that constitute the crime charged".
Id @ 614-15 (quoting Sandstrom v Montana, 442 U.S. 501(1979) In re of Winship,

(15)

397 U.S. 388, 394(1970) This error is an Instructional Misstatement of Law under Riley, supra. of Constituional magnitude. Held: Lefaber, supra. Which the COA has conceded by reviewing it for the first time on appeal, against the respondents contest. Per Federal Law a Constitutional, Instructional-Misstatement of Law requires a Harmless Error Analysis. This error denied Grubham a Fair Trial when it denied him his ability to argue his warranted theory of self defense and it relieved the State of its burden of proving every element (absence of self defense) of an offense, beyond a reasonable doubt" under State holdings Acosta, supra. Under this holding the burden, too, is Harmless Analysis Frost v Van Boening, 757 F.3d 910(9th Cir 2014) "The Supreme Court has divided constitutional errors into two categories: trial error, which are subject to Harmless error review, and Structural error, which require 'automatic reversal'" Arizona v Fulminante, 499 U.S. 279, 306-10(1991) "Structural errors defy Harmless Error Analysis standards because they affect the framework of which a trial proceeds". As shown in Frost, the case in point is, too, Structural under the deprivation of "proving every required element of the offense beyond a reasnable doubt" doctrine.

Within Frost multiple issues were declared as 'Structural'. This 9th Cir Opinion references the "every element..beyond a reasonable doubt" issue and cites Winship [357 U.S. 358] "In Winship the Supreme Court held that the Due Process Clause requires the prosecution in a criminal proceeding to prove all elements of the crime beyond a reasonable doubt" [357 U.S. @ 364] As the court explained, "[t]he standard provides concrete substance for the 'presumption of innocence--that bedrock 'axiomatic and elementary' principles whose 'enforcement lies at the foundation of the administration of our criminal law". Id @ 367 (quoting Coffin v U.S., 156 U.S. 432, 453(1895) The 9th Cir court references the "beyond a reasonable doubt" issue "as in Winship failing to

( 16 )

prove every element of the offense.."is UNQUESTIONABLY STRUCTURAL. This is paralleled in State law as well. State v Sibert, 168 Wn.2d 306(2010) State v Brown, 147 Wn.2d 330, 339(2002) RCWA 9A.04.100 Should the Court determine that this Constitutional-Instructional Misstatement of Law is not Structural it is then subject to Harmless Erro Analysis. Frost v Van Boening [757 F.3d 910]

### Harmless Error Standard of Review

State v Fricks, 91 Wn.2d 391, 396-97(1979) "We presume constitutional errors are harmful and we reverse and remand for a new trial unless the State meets the heavy burden of establishing that the constitutional error was harmless beyond a reasonable doubt". State v Easter, 130 Wn.2d @ 242 State v Guloy, 104 Wn.2d 412, 425 "A constitutional error is harmless beyond a reasonable doubt only if the evidence is so overwhelming that any rational trier of fact would necessarily have found the defendant guilty". Guloy, Wn.2d @ 425 "State Courts interpretations of State law, including one that is announced on direct appeal of a challenged conviction, binds the federal court sitting in habeas corpus" 28 U.S.C.A. §2254 Frost v Boening supra, Bradshaw v Richey, 546 U.S. 74, 76(2005)

This error cannot be Harmless. The State has determined in Lefaber that this error is "presumed prejudicial" just on its face. It has denied the defendant his ability to assert his claim that he was defending himself. A claim that the States prosecutor has conceded. Furthermore that same proseuctor has conceded that the alleged victim has no credibility. In fact he concedes that this witness testified falsely. The only way to overcome the self defense claim other than first aggression is 'more force than necessary'. The only persons who claim the defendant did not flee at his earliest ability is the perjurous witness and the State. State witness' Bautista and Dr. Dahlgren (using physical evidence) discredit any notion that Grubham 'stood over' Phillips striking him.

(17)

He had changed his story three times and made obvious false allegations against Grubham. Grubham and Investigator Harris felt acquittal was imminent. Grubhams only concern was why he hadn't been offered a deal. Or why it was continuing to trial? Just prior to trial Grubhams defense attorney stated that he was not going to subpoena key witnesses Officer Yankey or Defense Investigator Harris. This drew a huge red flag and Grubham stated as much. His attorney told him to "calm down". He told him to "relax" "we have multiple inconsistent statements AND a 'taped confession'". He stated "just let me do my job". So Grubham agreed.

At trial, Phillips takes the stand and tells a brand new story. He flatly denies making the statement alleging he'd been attacked from behind. When asked about the taped confession he says he "doesn't remember saying that". I ask my attorney "how can he deny that?" and "why don't you show him the reports and play the tape?". His attorney said "I can't! Its Hearsay!". Phillips is allowed to lie on the stand unchallenged or uncorrected.

Grubham takes the stand and tells his ever unwavering story. Honest to a fault and second by second replay. He admits saying "that's what I thought" just before Phillips attacked him. He is cross-examined by the State at such an auctioneers pace that the reporter had to ask them to "slow down". The State repeated the same questions differently, over and over. Per the nods and smiles from the jurors as he left the stand Grubham was confident that his version was being accepted as the truth. Apparently the State felt the same way.

The State admitted the it was Grubham who was attacked. Contrary to what Phillips said. The State never argued that what Phillips had alleged, (that he was attacked). The State told ~~me~~ (Grubham and) the jury that the 'statement' (that's what I thought) was what started the fight. He said the law says if you start a fight you don't get to claim self defense. He went so far as say that it may seem immature but Ignorance of the Law is No Excuse. I tried to get my attorney to tell them that I didn't mean you're a chicken (as the State said the statement meant) Defense said "it's to late now". When I got convicted I asked my attorney how I could be found guilty. He said he was going to find out. He returned in less than 5 min. He stated that "he spoke to only 3 jurors but ALL THREE said it was because of what you said".

When I first began studying law I believed 'speculation' of my words were the issue. I now know that words are irrelevant. It was a Misstatement of Law of the Self Defense jury Instruction that gave the jury no alternative but to convict me. Grubham was found guilty only because of the Misstatement.

Argument #2

PETITIONER WAS DENIED DUE PROCESS UNDER THE 14th AMENDMENT OF THE UNITED STATES
CONSTITUTION WHEN THE STATE KNOWINGLY ALLOWED FALSE TESTIMONY TO GO UNCORRECTED
IN ORDER TO OBTAIN A CONVICTION.THE STATE COURT OF APPEALS RULING THE FALSE
TESTIMONY IS MERELY A CREDIBILITY ISSUE AND NOT REVIEWABLE OR GROUNDS FOR REVER-
SAL IS CONTRARY TO FEDERAL LAW AND VIOLATES THE UNITED STATES CONSTITUTION.

## STANDARD OF REVIEW

"To obtain a reversal of a conviction on the basis of prosecutorial misconduct,
a defendant must show the prosecutor's conduct was improper and the conduct
had a prejudicial effect". State v Brett, 126 Wn.2d 136, 175(1995) "A distinc-
tion must be made "between ordinary trial error of a prosecutor and [the] sort
of egregious misconduct held..to amount to a denial of constitutional due
process" Donnelly V De Christoforo, 416 U.S. 637, 647-48(1974) "The relevant
question is whether the [false testimony] so infected the trial with unfairnes
s to make the resulting  conviction a denial of Due Process. i.e. "[Does the
false testimony] manipulate or misstate the evidence". Darden v Wainwright,
477 U.S. 168, 181(1986) It is "Held: The 14th Amendment can not tolderate a
State criminal conviction secured by the knowing use of false evidence". Miller
v Pate, 386 U.S. 1, 1(1967) Mooney v Holohan, 294 U.S. 103 (1935) "It is also
a violation of Due Process when the State, though not soliciting false evidence,
allows it to go uncorrected when it appears". Napue v Illinois, 360 U.S. 264
(1959) "The same rule applies when the prosecutor 'should have known' that
its evidence was false". Thomas v Cardwell, 626 F.2d 1375, 1381(9th Cir 1980)
"Such a conviction "obtained by the knowing use of false testimony is fundamen-
tally unfair and should be set aside if there is any reasonable likelihood
that the false testimony could have affected the judgment of the jury". Agurs
United States, 427 U.S. 97, 103(1976)


Phillips was asked if he'd told Officer Fatt, Sgt. Cronk or Det. Harker that
he'd been painting and he 'turned to put his paint down and was attacked [from]
behind and that he was initially stabbed in the back?" (exhibit A & B)(VRP
41,42) Phillips perjured himself twice and said "no". It is reasonably likely
that had Phillips admitted the entirely inconsistent from his testimony, state
his testimony as well as his credibility Could have been obviated. Holland
v Gee, 677 F.3d 1047(2012) "Fact finder is entitled to consider a parties dis-
honesty as

honesty about a material fact as "affirmative evidence of guilt" Reeves, 530
U.S. 133, 147(2000) It was the duty of the State to correct this testimony
"although he did solicit the testimony". Napue, supra. The State knew "or should
have known, that this statement was Phillips first version of the fight. It
was also the statement used in the Probable Cause Certificate. (exhibit A &
B) "A lie is a lie no matter what its subject, and, if it is any way relevant
to the case the [prosecutor] has the responsibility and duty to correct what
he knows to be false and illicit the truth". Napue, @ 269-70 If there is "any
reasonable probability" that this false testimony could have affected the ver-
dict. the conviction must be set aside" Napue, @ 271. Agurs, 427 U.S. @ 103

Phillips was the very first witness of the trial and of that first morning
He has given three prior inconsistent statements. (pg 8 of this brief) as well
as he made a false criminal allegation against Grubham (exhibit E)(exhibit
E pg 2 shows defendant not in court on the alleged day) It is reasonable to
believe that the statement Phillips made prior to trial, accepting the most
culpability is the truth or closest to the truth. see Reeves, 530 U.S. @ 133.
This reasoning suggests that Phillips taped confession, admitting attacking
Grubham is the truth or closest to the truth. Phillips comes to trial and testi-
fies that he simply approached Grubham and "[Grubham] just stepped off the
porch and stabbed me" [in the chest] VRP 28 Per Thomas v Cardwell SOR (see
Standard of Review) the procecutor "should have known" this testimony was false"
It can be shown that the State "knew" or "believed" this testimony was false
at the exact time of procurement.("The State must believe that the [witness']
testimony is true or the State has committed unethical and consitutional viola-
tions by introducing the false testimony.." Giglio v U.S., 405 U.S. 150(1972)
also Napue, supra.) The States own argument and actions (leading question and
proposing an aggressor instruction prior to trial) show he "believed" this

likely false testimony, to be false at the time of procurement. AT VRP 265
and  311 during an argument asserting that Grubham was the first aggressor
the prosecutor argues that Grubham 'started' the fight with a 'statement' he made
"as Phillips is walking away" [after he walked up to him first then was walking
back to paint] VRP 28 The State concedes that a "combative response is exactly
what Grubham got" after the mere words "that's what I thought". The fact is
that the State believed that Phillips attacked Grubham after Grubham made the
statement before trial. At the time the State proposed the Aggressor instruction
coupled with the Ignorance of the Law...instrction, both used to argue and
support that Grubham was not entitled to claim self defense because he'd started
he obviously believed that is what happened. Because of the multiple prior
statements, two of which are accept more culpability (#1 & #3 @ pg8 of this
brief) this testimony "he just stepped off the porch and stabbed me" is likely
false on its face. Had it been true, this is what would have been Phillips
assertion always. As Phillips is testifying that Grubham "just stepped off
the porch and [attacked] VRP 28 the prosecutor asks "Well is that what happened
first or did you go back and paint--" Phillips interrupted the question "yeah,
I went to him I went back to paint then I went back to him and got stabbed"
(paraphrased) The prosecutor was leading the witness into supplying evidence
to support an illusion that Phillips was provoked by the statement. RP 265
"Philllips is walking away" "[Phillips] shouldn't fall for that" but a "comba-
tive response is exactly what [Phillips gave him]" The State knew or believed
Phillips testimony at RP 28 "he just stepped off the porch and stabbed me"
to be false before and during the giving of the false evidence. Just this show-
ing requires reversal under Giglio supra and Napue supra. (the State "should
believe that the witness' testimony is true or it has committed ethical and
constitutional violations by introducing false testimony") This testimony could

( 21 )

24

**have affected the judgment** of the jury" Agurs, see SOR (stand. of review)
Even though Phillips testimony was contradicted, nor was it ever argued as
true, the State relys on this testimony on appeal as sufficient to support
the giving of the aggressor instruction. (see Unpublished Opinion-340170-3-
II) This statement **continues to affect this judgment!** The State required this
false testimony in order to obtain, or not discredit, an Aggressor Instruction
which was used to obtain a conviction. This false testimony was "allowed to
go uncorrected in order to obtain a conviction. (see Standard of Review)

It is the petitioners position that the State 'coached' Phillips in the
art of denying his taped 'confession' admitting to being the initial aggressor
by way of 'No recollection'. The prosecutor warms the witness up with VRP 31
using the key word "remember"

> Q: Do you 'remember' grabbing Grubham?
> A: I--I don't think so.
>
> Q: Do you 'remember' talking to Investigator Harris?
> A: yeah

The State then goes on to admit, on the record, that the two 'just reviewed'
his testimony. Phillips was the first witness. It was approx 9:30 am. Why would
he have to 'remind' Phillips that they 'just spoke about this' unless it was
a key to focus on what they'd just discussed. Getting ahead of the evidence
and argument, why would Phillips 'remember' talking to Harris but not 'remember'
telling Harris that he walked up to Grubham and dragged him off the porch," not
once but twice. (exhibit D) The State has used leading questions to support
an illegal arguemt. He has, before this incident, knowingly allowed two instances
of critical testimony, known to be false, to go uncorrected in order to obtain
this conviction. Where would Phillips obtain the confidence to testify falsely,
knowing he has multiple inconsistent statements filed. One that is taped. Mr.
Phillips has a violent criminal history (sentencing RP 18) He has motive to

testify falsely. He has already testified falsely alleging "death threats"
from court on a day Grubham was not in court. (exhibit E pg 1 & 2) Had Phillips
"remembered" telling Harris that he "grabbed" Grubham and "dragged him off
the porch" at the very beginning of the trial, it would have substantially
changed the dynamic of the remainder of the jurors perception as well as the
Appellate Courts. Within the Unpublished Opinion #40170-3-II the Court gives
great weight to Phillips testimony as well as his deceptive theory that he
was being viciously attacked and he was, basically, curled in a ball begging
for mercy. "never touched him" VRP 35 "Never a fight" VRP 39 All "one-sided"
VRP 39 he was "pinned" to the tree. RP 33 "never punched him" VRP 32  Every
one of these assertions were raised as supporting evidence in the Court of
Appeals Opinion. Every one of these assertions were directly contradicted by
Phillips himself in (exhibits A thru e) except the "pinned to the tree" state-
ment. That is contradicted by Bautista in his testimony. He testified that
he ran up to the fight and it was Grubham "pinned" to the tree RP 102, 105
to his back. Sitting with Phillips on top of him (in his lap) as Grubham was1
yelling "let go of my leg" repeatedly. Phillips testified that he'dwent to his
knees and Grubham, apparently standing over him, continued "stabbing him in
the back and on top of my head"!! The State allowed this false testimony to
go uncorrected even though he knew that Phillips was the aggressor and it was
Grulbhlam who was trying to escape the entire time and did so at his earliest
possibility. "As [he] slid out from under" Phillips "he ran". RP 239 This is
suported by State witness Bautista. RP 102, 105 Bautista testifies that Grubham
was "sitting" or "squatting" with Phillips "head in [Grubhams] lap" Phillips
"arm around [Grubham]" when [Bautista] "pushed" [Grubham] off" The simple fact
is that Phillips entire credibility is zero and the State knew this long before
trial yet he "allowed" him to testify falsely and to things that are unlikely.
This is akin to fruit of a poisoned tree. It should all be considered tainted.

Argument #3

PETITIONER WAS DENIED HIS 6th AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITU-
TION WHEN HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL. COUNSELS FAILURE TO
OBJECT OR CORRECT A MISSTATEMENT OF LAW OF A SELF DEFENSE INSTRUCTION SUPPORTS
A LACK OF LEGAL KNOWLEDGE THAT FALLS BELOW A REASONABLE STANDARD OF REPRESENTA-
TION OF A SELF DEFENSE CLAIM. THERE COULD BE NO TRIAL STRATEGY TO NOT CORRECT
A MISSTATEMENT OF LAW THAT ERRONEOUSLY DEMANDS AUTOMATIC CONVICTION REGARDLESS
OF HOW FAVORABLE THE SELF DEFENSE CLAIM APPEARED OTHERWISE. B) APPELLATE COUNSEL
IS, TOO, INEFFECTIVE FOR FAILING TO RAISE THIS ISSUE ON APPEAL AND SHOW THAT
THIS ERROR WAS AN INSTRUCTIONAL ERROR THAT REQUIRED AUTOMATIC REVERSAL AT STATE.

## STANDARD OF REVIEW

"The right of an accused in a criminal trial to Due Process in, in essence,
the right to fair opportunity to defend against the States accusations" Chambers
v Mississippi, 410 U.S. 284(1973) "the benchmark for judging any claim of in-
effectiveness must be whether the counsels conduct so undermined the proper
functioning of the adversarial process that the trial cannot be relied on as
having produced a just result" Strickland v Washington, 466 U.S. 668, 686(1984)
"the court held that a new trial must be granted when evidence is not introduced
because of the incompetence of the counsel only if "there is a reasonable proba-
bility that for the counsels unprofessional errors, the result would have been
different" Id @ 694 Competence is defined within the States Rules of Profession-
al Conduct 1.1 COMPETENCE-"Competent representation requires 'legal knowledge',
skill, and preparation reasonably necessary for the representation" Establishing
"a reasonable probability of a different outcome requires something less than
a showing of counsels deficient performance 'more likely than not' altered
the outcome of the case" Strickland, 466 U.S. @ 693 "Instead, **a reasonable
probability is one "sufficient to undermine the confidence in the outcome**"
Id @ 694 United States v Bagley, 473 U.S. 667, 682(1985) A two prong test was
established under Strickland. "Defense counsel is ineffective where (1) the
attorneys performance was deficient, and (2) the deficiency prejudiced the
defendant". Efficiency falls under the guise of 'a professional standard of
reasonableness' The Standard is set in the Rules of Professional Conduct (1.1)
"Only legitimate trial strategy or tactics constitute reasonable performance".
State v Kyllo, 166 Wn.2d 856, 869(2009)

There can be no fathomable trial tactic or strategy to justify 'not' objecting to an instructional Misstatement of Law that demands conviction regardless of how favorable the defendants claim seemed otherwise. The defendants claim was likely favorable due to the fact that the States argument concedes the believability of the defendants theory that he was the one attacked. Conceding this fact, coupled with the fact the State never argued Phillips allegation that he was attacked, suggests strongly that by closing argument (post fact findig) Grubham was the credible witness and Phillips was not. The only reason the defense counsel courl have to not object would be lack of legal knowledge. He didn't know it was a Misstatement of Law. To not have legal knowledge of the laws of self defense, when he is representing a client on a self defense claim is Incompetent under RPC 1.1. There is a reasonable probability that this outcome would have been different simply considering the State is conceding on the 11th hour that Grubham was attacked, Grubham's theory is credible, and therefor Phillips testified falsely. At the minimum Phillips isn't credible enough to attempt to argue his version. It is likely Grubham was convicted ONLY because of the Misstatement of Law that said he wasn't entitled to defend himself because the DID say "that's what I thought" just before Phillips "cobat- ively responded'. The States ruling that a showing of a 'substantial likelyhood that this error affected the verdict' (Opinion-Direct pg 19) is contrary to federal law.

B) Deficiency for Appellate counsel failing to raise this issue is mirrored under the preceding paragraph. Prejudice is established in State v Lefaber, 128 Wn.2d 896, 898(1996) A showed "misstating the laws of self defense is (1) "constitutional" (2) "prejudicial" (3) "reviewable for the 1st time on appeal" (4) "reversible error" Appellate counsel also failed to show that this error relieved the State of its burden to prove every element of the offense beyond a reasonable doubt" Acosta supra and that that "requires automatic reversal" State v Sibert, supra and State v Brown, supra.

(25)

Argument #4

PETITIONER WAS DENIED HIS 6th AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITU-
TION WHEN HIS TRIAL COUNSEL FAILED TO SUBJECT THE STATES MAIN WITNESS AND ALLEG-
ED VICTIM TO AN EFFECTIVE ADVERSARIAL, IMPEACHING CROSS-EXAMINATION. NOR DID
HE PRESENT THE IMPEACHING EVIDENCE THAT WOULD, PROBABLY AND REASONABLY, CAST
DOUBT TO THAT WITNESS' TESTIMONY. AGAIN, THE STATE AVOIDED REVIEW UNDER STANDARD
CONTRARY TO FEDERAL LAW. SPECIFICALLY: SUPPORTING EVIDENCE WAS OUTSIDE THE
DUE TO THE VERY ISSUE BEING RAISED; COUNSEL FAILED TO SUBMIT IT AND IMPEACH.

### STANDARD OF REVIEW

"The benchmark for judging any claim of ineffectiveness must be whether counsels
conduct so undermined the proper functioning of the adversarial process that
a trial cannot be relied on as having produced a just result". Strickland v
Washington, 466 U.S. 668, 686(1984) "Cross examination should be limited to
the subject matter of the direct examination AND matters affecting the credibil-
ity of the witness" ER 611 MODE AND ORDER OF INTERROGATION. "The Court held
that a new trial must be granted when evidence is not introduced because of
incompetence of counsel if "there is a reasonable probability that but for
the counsels unprofessional errors, the outcome would have been different"
Strickland, 466 U.S. @ 394 "The court defined reasonable probability as a 'proba
bility sufficient to undermine confidence in the outcome'." Id @ 394 The two
prongtest under Strickland is (1) the attorneys performance was deficient and
(2) the deficiency prejudiced the defendant. "Defense counsel has represented
the defendant to the satisfaction of the Sixth Amendment when counsel fails
to pursue an impeaching cross-examination or present additional evidence that
would in all reasonable probability cast a reasonable doubt on the testimony
of the governments main () witness(es)." U.S. v O'Grady, 908 F.2d 170(7th Cir
1990) "Held: "The Confrontation Clause (6th Amend) commands that reliability
be assessed..; by testing in the crucible of cross-examination." Crawford v
Washington, 541 U.S. 36, 38(2004)

For brevity sake, petitioner will not support the impeaching evidence within
this issue except to point to Ground #2 of this memorandum and assert that
the supporting evidence in ground #2 showing testimony as false is the same
evidence the defense counsel should have impeached State key witness Ronald

Phillips. When Phillips denied his original, inconsistent to his testimony, statement; alleging he was attacked from behind and 'initially' struck in the back (exhibit A & B) there was no competent strategy to not impeach Phillips with the (A & B) statements. Certainly when he had them with him in the court-room. RP 43 (I've got a report of it. That's why I'm asking the question) When Phillips denied 'remebering' his taped statement (exhibit D) admitting attacking Grubham, counsel was incompetent under ER 611 as cited in SOR (stand or review) for failing to impeach the denial and his credibility under ER 803(a)(5) **Recorded Recollection** Counsel failed to impeach Phillips under ER 609(a)(2) 'prior false statements' with the false allegation Phillips made against his client <u>since</u> the incident. Counsel is incompetent for not impeaching Phillips with any of the three prior inconsistent statements Phillips made ER 613. The evidence supporting False Testimony clearly should have been presented to im-peach the States key witness.* There could be no trial strategy not to impeach the States most important witness that testified falsely against the defendant. Prejudice is clear also. The Courts of Appeals, even though the prosecutor has conceded he testified falsely RP 265 still relies on Phillips testimony to support this conviction.

*<u>U.S. v Hibler,</u> 463 F.2d 455(9th Cir 1972)

> "To satisfy the foundational requirement for introduction of an alleged statement for impeachment, the cross-examiner should ask the witness whether he made the statement, giving its substance, naming the time, the place, and the person to whom made. IF the witness denies the making of the statement or fails t admit it, the cross-examiner **must prove the making the alleged statement** at the next stage of giving evidence" <u>Robertson v M/S Sanyo Mar,</u> 374 F.2d 463, 465(5th Cir 1967)

Defense Counsel was Constitutionally Ineffective under the <u>Strickland</u> standard for failing t impeach the credibility of the States main witness. He was defi-cient under the rules of cross-examination ER 611 and his failure to do so reasonably affected the outcome. There was no tactical advantage to not impeach.

CONCLUSION

The State has knowingly allowed false testimony to go uncorrected in order

to get a first aggressor instruction for the purpose of misstating the law

of that same instruction and thereby guaranteeing a conviction because Grubham

had said a "that's what I thought" before being attacked. Grubham's trail

and appellate attorneys failed to protect him from these egregious acts.

For one or all of the grounds raised Grubham's conviction should be reversed

and remanded for a new trial.


I, Bradley Grubham, pro se petitioner in this matter, do solemnly swear,

under the penalty of perjury under the laws of Washington State as well as

the Federal laws of the United States of America, that each and every word

in this pleading is true and correct to the absolute best of my knowledge.

(Title page through pg 28) I make the same oath regarding to every statement,

allegation and presentation I have submitted within the State Courts as well.


DATED this 21 day of May, 2015 Signed in Clallam County, Washington State.

X _____
Bradley Grubham #300531
Clallam Bay Corr. Cntr.
1830 Eagle Crest Way
Clallam Bay WA 98326